SC

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David E. Griswold, | No. CV 13-0228-PHX-DGC (BSB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff David E. Griswold, who is confined in the Arizona State Prison Complex-Lewis, Barchey Unit, in Buckeye, Arizona, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*. The Court will order Defendants Ryan, Valenzuela, Merchant, Echeverria, Ende, and Lewis to answer Count I of the Complaint and will dismiss the remaining Defendant without prejudice.

**I.    Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee. 28 U.S.C. § 1915(b)(1). The statutory fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**II.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against

a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

### III. Complaint

Plaintiff alleges one count for denial of constitutionally-adequate medical care. Plaintiff sues the following current or former employees of the Arizona Department of

Corrections (ADC)[1]: Director Charles L. Ryan; Facility Health Administrator (FHA) Helena Valenzuela; Physicians Kevin Merchant, Carmel Echeverria, Unknown Ende, Unknown Lewis, and John Doe.  Merchant, Echeverria, and Ende worked at the Lewis Complex.  Valenzuela, Lewis, and Doe worked at the Tucson Complex.  Plaintiff seeks injunctive, compensatory, and punitive relief.

## IV.   Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right.  Wood v. Outlander, 879 F.2d 583, 587 (9th Cir. 1989).  Negligence is not sufficient to state a claim under § 1983.  Daniels v. Williams, 474 U.S. 327, 330-31 (1986).  In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

Plaintiff alleges a single claim for constitutionally-deficient medical care.  Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment.  To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  Jett, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know

---

[1] Plaintiff alleges Defendants either worked for ADC or Wexford Health Sources, Inc., which contracted with ADC to provide medical care to inmates between July 1, 2012 and March 3, 2013.

1   of and disregard an excessive risk to inmate health; "the official must both be aware of facts
2   from which the inference could be drawn that a substantial risk of serious harm exists, and
3   he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate
4   indifference in the medical context may be shown by a purposeful act or failure to respond
5   to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439
6   F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally
7   denies, delays, or interferes with medical treatment or by the way prison doctors respond to
8   the prisoner's medical needs. Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

9         Deliberate indifference is a higher standard than negligence or lack of ordinary due
10  care for the prisoner's safety. Farmer, 511 U.S. at 835. "Neither negligence nor gross
11  negligence will constitute deliberate indifference." Clement v. California Dep't of Corr., 220
12  F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter Labs., 622 F.2d 458,
13  460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice"
14  do not support a claim under § 1983). "A difference of opinion does not amount to deliberate
15  indifference to [a plaintiff's] serious medical needs." Sanchez v. Vild, 891 F.2d 240, 242
16  (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim
17  against prison officials for deliberate indifference. See Shapley v. Nevada Bd. of State
18  Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial.
19  The action must rise to a level of "unnecessary and wanton infliction of pain." Estelle, 429
20  U.S. at 105.

21        Plaintiff alleges the following facts: in 2010, while he was housed at the Tucson
22  Complex, Plaintiff was diagnosed with Hepatitis C (HCV). During a prior incarceration,
23  Plaintiff had tested positive for HCV and he was subject to ADC's monitoring protocol.
24  While housed in the Tucson Complex, Plaintiff also tested positive for tuberculosis (TB).
25  After discussions with Defendant Doe, "it was determined" that Plaintiff should not be
26  treated with "INH" medication for his TB because INH was very toxic to the liver.[2] Doe told

---

28      [2] INH is one medication that can be used to treat latent TB or TB disease. See http://www.cdc.gov/tb/topic/ treatment/default.htm (last visited Mar. 20, 2013).

1  Plaintiff that based upon his HCV, he should never take INH and Doe stated as much in
2  Plaintiff's prisoner health file.

3  After being diagnosed with HCV, Plaintiff submitted repeated Health Needs Requests
4  (HNRs) seeking diagnostic testing, including a CT scan, biopsy, monitoring protocols, and
5  anti-viral treatment protocols. According to Plaintiff, state statutes and prison policies
6  specify that health care providers are responsible for insuring and authorizing testing,
7  monitoring, and treatment.[3]

8  On February 18, 2011, Plaintiff was prescribed INH and given direct orders by ADC
9  security staff and Dr. Lewis to begin taking INH. Plaintiff was threatened with disciplinary
10 sanctions and placement in isolation if he refused. Plaintiff expressed concerns about
11 potential toxic liver damage from taking INH when he had HCV. Lewis noted Plaintiff's
12 concern, but told Plaintiff that ADC protocol required all inmates with positive exposure to
13 TB to be placed on and complete INH protocols. Lewis further told Plaintiff that in his
14 professional opinion, the potential risk from INH protocols was far greater than any possible
15 benefit, but ADC policy required that Plaintiff complete the INH protocol or be placed in
16 medical isolation for the duration of his confinement.

17 Plaintiff contends that while ADC policy was specific about protocols for positive TB
18 skin tests, the policy also gave Lewis the authority to override ADC medical policy in order
19 to authorize and provide for the health, care, and safety of all inmate patients under his care.
20 Plaintiff contends that Lewis demonstrated knowledge of the ADC policy but chose to
21 subject Plaintiff to the risks of INH protocols for someone with HCV.

22 Plaintiff filed a grievance seeking administrative review of being compelled to
23 complete INH protocols "while ignoring HCV diagnostic testing, monitoring, and treatment
24 protocols." (Doc. 1 at 7.) Valenzuela acknowledged ADC's policy regarding HCV, but
25 "failed to complete proper review and correct error." (Id.) Plaintiff contends that she thereby
26 failed or refused to comply with ADC policy.

27
28
---
[3] Plaintiff fails to identify the statutes to which he refers.

1         On June 21, 2011, Ryan investigated Plaintiff's grievance appeal. Ryan 2 acknowledged the policies concerning diagnostic testing, treatment, and monitoring protocols 3 for HCV and TB. He also acknowledged the potential toxic effects of INH on the liver and 4 the need to monitor the situation. Ryan assured Plaintiff that diagnostic testing, treatment, 5 and monitoring protocols had been or would be observed despite the obvious failures to do 6 so.

7         Plaintiff contends that the medical Defendants failed or refused to address his serious 8 medical needs by failing to provide adequate diagnostic testing, treatment, and monitoring 9 of both his TB and HCV, including assessment of the extent of any liver damage from 10 administration of INH.

11        In 2012, Plaintiff was transferred to the Lewis Complex. Upon his arrival, Plaintiff 12 submitted numerous HNRs seeking a review of his medical history and authorization for 13 diagnostic testing, treatment, and monitoring of his HCV and TB. Through consultation, 14 review of his medical history, or recommendations regarding his history, Plaintiff had direct 15 contact with Ende, Merchant, and Echeverria. Ende, Merchant, and Echeverria conferred 16 with Plaintiff as a patient concerning HCV-related complications, including pain, but at no 17 point authorized adequate medical testing, monitoring, or treatment of Plaintiff's HCV 18 complications. According to Plaintiff, Ryan also confirmed that ADC administration failed 19 to properly address his initial grievance. Ryan indicated to Plaintiff that he had investigated 20 and reviewed Plaintiff's grievance and concluded that no further action was required. 21 Plaintiff contends that Ryan has thereby tacitly condoned the failure of ADC medical 22 professionals to comply with their obligations as to his medical conditions.

23        Plaintiff alleges that Doe advised against Plaintiff taking INH for his TB due to his 24 positive HCV test because INH was very toxic to the liver. These allegations do not support 25 that Doe in any way acted with deliberate indifference to Plaintiff's serious medical needs. 26 Accordingly, Plaintiff fails to state a claim against Doe and he will be dismissed.

27 **V.    Claim for Which an Answer Will be Required**

28        Plaintiff alleges that Defendants Ryan, Valenzuela, Merchant, Echeverria, Ende, and

1 Lewis have failed or refused to monitor and treat his HCV and TB or have endorsed the
2 failures of the medical Defendants to monitor and treat his medical conditions.  Plaintiff
3 sufficiently states a claim against these Defendants and they will be required to respond to
4 the Complaint.

**VI.	Warnings**

**A.	Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result in dismissal of this action.

**B.	Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**C.	Copies**

Plaintiff must submit an additional copy of every filing for use by the Court.  See LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.	Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  See Ferdik, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)	Plaintiff's Application to Proceed *In Forma Pauperis* is **granted**.  (Doc. 2.)

(2)	As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

(3) Defendant Doe is **dismissed** without prejudice.

(4) Defendants Ryan, Valenzuela, Merchant, Echeverria, Ende, and Lewis must answer Count I.

(5) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Ryan, Valenzuela, Merchant, Echeverria, Ende, and Lewis.

(6) Plaintiff must complete[4] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(8) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure and Rule 4(j)(2) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

> (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

---

[4] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13) This matter is referred to Magistrate Judge Bridget S. Bade pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 27th day of March, 2013.

*David G. Campbell*
---
David G. Campbell
United States District Judge